*253 OPINION of the Court, by
Judge Wallace
n¡s is a coutest for land, in which Montgomery, the defendant in the court below, relies on his having the eldest entries. But the court, as usual, will first as-certam the validity and true situation of the entry on ' which the complainants found their claim. This entry and those on which it depends, are in substance as follows : ‘‘July 24, 1784, Mastin Clay enters 2231 1-2 acres ot land, &c. on the waters of Sdver creek and Paint •Luck, to adjoin a pre-emption of Andrew Kenkannon’s on the^westward!)’ side, to begin upon his line, 300 poles from the most southwardly corner ofhis unper survey when reduced to .a straight line ; thence west ' 446 P°les? thence 80u* 800 1-2 poles, thence east 446 poles, and thence north 800 1-2 poles to the begining.” ' When this entry was made Kenkannon had not surveyed any part of his pre-emption ; therefore, his entries, and not his surveys, must have been intended. They are m substance as follows : “June 20,1781, Andrew Ken-kannon enters 1000 acres upon a pre-emption warrant, No. 1004, 200 acres of which, across on both sides of bilver creek, above and below Boone’s old trace that leads to the settlement.” “June 20, 1781, Andrew Ken-kannon enters 400 acres, adjoining the above entry below, and running down Silver creek on both sides for qU?ntUr- And ‘‘,JU0C 20’ mi> Andrew Kenkannon enters 400 acres adjoining the former entry oí 400 arces running down Silver-creek on both sides for quantity.”’ Joy the depositions exhibited in this suit, it is satisfoc-tonly proven, that Sdver creek, Paint Lick creek, and oone s old trace, which are cabed for in these entries, names, at tne times and were ad well known by those names, ui uie times and Jong before they were made, and that the place where Boone s trace crossed Silver creek is truly laid down in the surveyor’s report. And this court concurs in pinion with the court below, that Kenkannon’s 200 acre entry should have been surveyed in a square, with the place where Boone s trace crossed Silver creek ⅛ thtí anc^ so ^at the creek would intersect the middle ot the upper and lower lines of the survey. But it is u^CeJVedi ^ ⅛6 manner in which th¿ court below has decided that Kenkannoa’s first entry of 400 acre£
kerne objects ©f general aei-cuption not identified, deemed iurpiuf age, other ob jeers of general, and 'fj-erial del criptum alluded to in the entry being proved. Entry “toj.-m an improvement (wh¡ch coniifted of a cab;n and 16 acres of c'eareü ianci) including a taring.”
The tubin not to he dim áard ed, it ts a iría-tenai part of &n improvement, How to be iurveyed —» Bruce vs. Ej - nil ID* Dec. 1%^ — Vvic Braajfj-d vs. H4'Crackings heirs, Pr Dec. ^%-^Morgun ⅞/.„ R,Oinjonf Pr. Dec, 2.69 ■~~M.oore vs. Harris, Pr.
A call, to in - elude a Jprmg1 which was not exhibited, d emed imma-ferial by rea Jem of the o: her locative cki<Ti p * rions in theca fry.
44 To join K. *a the S. 1'. comer ssd to run eaftwardly** h<»w to be fur-Veved' -
*254 should have been surveyed, is not altogether correct. Conformably to the cases Smith vs. Grimes, (Hugh. 18.) Lillard’s adm'r. vs. Taylor's heirs, (Pr. Dec. 246.) and several others which might be cited, the upper line of this survey should extend equal distances beyond the east-wardly and westward!)' corners of the lower line of the 200acre survey, so far that lines passing from the terminations thereof would meet the termination of a line which would include the quantity of 400 acres ; the last mentioned line to be the length of the base of a square survey of 400 acres, and to be intersected in the middle by the creek, and run at right angles to a direct line passing from where the creek enters the survey to where it goes out of the same. Then in compliance with the call in Clay’s entry, beginning upon Kenkan-non’s line, 300 poles from the most southwardly corner of his upper survey when reduced to a straight line ; the beginning of this, entry, should have been fixed on the westwardly line of Kenkannon’s 400 acre survey thus laid oil) 300 poles on a direct line from the most south-wardly center of his .200 acre survey. This court, however, cannot say with precision, what change in the decree of the court below this mode oí fixing the beginning of Clay’s entry will produce ; but it is believed, that although the appellants may not thereby recov-r more land, yet they will recover some land not adjudged to them by the court belowr ; which ought to be considered as a sufficient cause of appeal.
The court will now proceed to ascertain the validity and proper situations of the entries ol the appellees. They are in substance as follows :
“ January 15, 1780, John Kennedy, Iud. assignee of John Tate, enters 400 acres, &c. by virtue of a certificate', lying on the head ot an eastern branch oí Paint Lick creek, joining an improvement rnade by John Kennedy and others in 1776, including a sinkhole spring near an old Indian town house,”
“ June 3, 1780, John Kennedy enters 200 acres, he. : on the head of the Walnut Meadow fork of Paint Lick ,; creek, about 3 miles from the Blue Lick, adjoining his ¾ settlement as assignee of John i’ate, on the" south east ; r-tdemem, including a spring corner of sai corner, and .running eastward!)’. near said
“To join another entry at the S. E* corner and to run E. for quantity™, how to be furveyed.
300 acres to join entry ot 360 acres <( on the S. and E» fides, and to run S. and E« for quantity,’* how to be,::£y&? YCyed.
li October 19, 1780, John Kennedy enters 250 acres, '.\r. on the head of the Walnut Meadow fork of Paint Lick creek, adjoining his former entry of 200 acres on the south side, beginning at the southwest corner oí said entry, and to extend east for quantity,”
“ July 18, 1781, John Montgomery enters 160acres, Ac, to join the east side of a 250acreen?ry of John Kennedy, deceased, on the east branch of Paint Lick creek, about 1-2 mile from the Walnut Meadow.”
“February 14, 1782, John Montgomery enters SCO acres of land, &c. on the Walnut Meadow' fork of Paint Lick creek, to adjoin his former entry of 160 acres, on the south and east sides, and to run south and east for quantity.”
From the depositions exhibited in this suit, it appears that the Walnut Meadow fork of Paint Lick creek was well known by that name from a very earlv day ; and that it is an east or eastern fork of that creek, and as no other eastern fork is proven or shewn, it could not have been mistaken ; more especially as it is connected, in the last recited entry, with an improvement made by John Kennedy and others in the year 1776, which is proven to have been large and very no-toiious. The situation oi the old Indian town house is also satisfactorily proven. Am! as to the situation of the Walnut Meadows and the Blue Lick called for in. these entries, they are indeed neither proven nor delineated ; but as they are only calls of general description, they are rendered superfluous by the other well known calls both general and special which are contained therein. The entry of John Kennedy for 400 acres, being the foundation of the others, it ought to be first considered. This entry was autho-rised by a certificate for a settlement right of 400 acres obtained from the commissioners, but the locative parts thereof being of the same import, can nfeither aid nor explain the entry. And it might be further observed, that it is not shewn when this settlement right was survey ed ; but the omission ought not tobe regarded hi the present suit; because it cannot be presumed that it bad been surveyed md a grant obtained thereon, pri- or to the date of the entry which calls to adjoin it. -Those parts of this settlement entry which require fur-let attention, are, joining an improvement made5 bv *256 John Kennedy and others in 1 ”76, including; a sink hole sPrinS near an old Indian town house*. It appears that the improvement here called for, consisted of about 16 acres of (I -a-ed land, on which a good crop of corn was ra sed In that year, and a cabin or house in which Kennedy a.el those who assisted him resided whilst they rah t tí die coro, a d h v's 'iryird to the nor,he '-,‘n ! ol lue <, e> n*- <' < n* '<< r poles. The courtb lo-v hav d1 rey.».’1 ; t*'c- r ’ in. end directed that this 400ar'cs ‘hoj,d adjda t\ -1 oo-oa : but this court is of op’nif n ti ;> Tie rabia one,1'’ ole considered as a materia* ya-r o! the improves it ; n-vl so it was deemed in the cav Smith v. Harrow (vol. 1, p. 101-2,) where the circuroamr. s vw vt it • • i; .r to the present case ; and it is certain, that during the period in which claims for improvements originated in this county, a cabin was universally considered to be an improvement or part of an improvement, and so it is presumed locators would have understood this call. It further appears that the sink hole spring called for is idénti-lied with certainty, and was well known at the time this entry was made and long before, and is in.a north-eastwardly direction from the said cabin ; therefore, it stems that the survey on this 400 acres, should have beta made in a square, withthe middle of the southwestern boundary at the place where the said cabin was situated, anti extended northeastwardly, so that a direct line passing from that place through the said sink hole spring, would bisect the survey. On the south-east corner of this settlement, John Kennedy’s 200 acre entry calls to adjoin, including a spring near said corner, and running eastwardiv. No spring is shewn, which with propriety can be said to be near that corner ; and if there were, other locators, it is presumed, would not have understood that it was intended to control the courses ortho position of the survey to be made thereon. The call, adjoining the south east corner of the said settlement, is too explicit to need const! uction, when there is no call in the entry which forbids its being taken literally. But in the. case Crow's heirs vs. Harrod’s heir, Hamid’s heir relied on a location, which contained the expressions, joining the northwest side of the land of J. B. and including the improvement of T. II. And it was shewn that this improvement lay *257 in a northwest direction from the land of J. B. and that the land of jb R. had a northwest corner, but no north- *- m. id*, i o> n -th\ve«t'"arddv side. In that the .'tv-tv > i i oi.iii'cn, ti» at the exp* emion, northwest v ,t ouvlit to be *. ! en to m ;>n, d muhwest fm t ; ”.:u! do _rt, «i thr Leul to he i ml <• if A nirn:n;, t qnal <1.-1 hum .he north’.’, st cwivr oft!., i md o'. J. B. clou , h , nr>! :h i n ; d v., n» l>n-n ! **:< ", eo Í - re to p <w. t a !w ' 1* r *Vc su •..•». o» £’k' ■ xrf as the < t* • i'J!“ ol t’’ ’cr o n ‘ i ri ',, d, '] n t'’ecisiott is .id d. .ns ti co: u et • err tV ’ i - is c» i -.i,. 1 to be ; t tte": ,1b d ff » »,t ’• ora d e \r> v ru ■ arc. I- that case id ttotj c u |⅜ t h k., iru diy ; nor could A with pi-p »‘ i.1,’' p. ‘d- r i ,rc g.n Jo! ; tie court tV’-'d >rc ' n "< i a ,1 in c »> .n c it to n,w’n the ⅜1 3, 'ho • » » • ¡-a 11 ; i i *n •; : in ; T :t in a lax or hid, find mv, it ' ft'.,uc’io *‘i<l <•; i mo ¡non par-í <nre, v ’ -* ’!■- in-» peon - 5 only to point nut the Kar-of one n1 ‘ ¡' o11 another. ib t in the pns nt caw, Kennedy ', -c rie.nu.t, when ■ oree} f d coni, .rvna-1 co erun . n pi.-.er.t a <'ruíh" wti m corner, and the expression, Joining the souintasi corner, maj be literally complied with ; so that there is no necessity for construction. The last call in this entry, running eastward!}*, is somewhat indefinite. But by several of the former decisions of this court, it has been settled, that such calls, when they are locative, ought not to destroy . an entry ; but that the latitude which the expressions seemed to import, should be disregarded, and the calls to be taken as if a precise course had been called for. Therefore, this court accords in opinion with the court below, that the survey on this entry should have been made in a square, with the middle of the base touching the corner of Kennedy’s settlement survey, and extending east for quantity.
It is only necessary further to observe, that the manner in which the court below has direct* d John Kennedy’s entry of 250 acres, John Montgomery’s entry of 180 acres, and John Montgomery’s entry of 300 acres, to be laid off, is undoubtedly correct: that is tq say, John Kennedy’s entry of 250 acres, should be surveyed in a square, adjoining his 200 acre survey on the south, when run off as has just been directed, placing the northwest corner of the 250 acres, at the southwest corner of *258 the 200 acrm. Then John Montgomery’s entry of 160 acres, shook! he surveyed in a square, adjoining John Kennedy’s 3óO acre survey on the east, when ran off as has just been directed, placing the middle of the 16# acres at the middle of the 250 acres. And then John Montgonv-ry’s entry of 500 acres, should be surveyed adjoining his 160 acres, when laid off as has just been directed, on the whole of the south and east boundaries, extending equ A distances therefrom. Here it may not be improper to repeat, something similar to what was mentioned in the pix ceding part of this opinion : this court cannot say with precision, what change will be produced in the dt cree of the court below, by the man* her this court has prescribed for fixing the situation of Kennedy’s settlement ; but it is obvious from the surveyor’s reports, exhibited in the suit, that the appellants will recover some land by the alteration, which otherwise they would not get ; and that this ought to be con* sidered as sufficient cause for the appeal they have prosecuted.
The general rale is, that when a xawrd ebjtB is found, ic ought Co b® prejumedtohz.'t& «rxiíled before the date of che entry calling for it, but to chis rule iprtngs in tlus country are excepción?..
*258 Wherefore, it is decreed and ordered, that the said decree of the circuit court for the county' of Madison, be reversed and held for nought ; and that the appellants do recover from the appcllee, their costs in this behalf expended. And it is further decreed and ordered, that the suit be remanded to she said coui t ; and that it cause the interference oí the claims of the said parties to be ascertained, conformably to the foregoing opinion, and enter up decrees in favor of the com plain-ants in that court, for ail those parts of the irterf. tints which shall be found to be within their claim, both as it has fact n ongiaaliv surveyed, and has herein been directed to be surveyed ; and which shall not also be found within the bounds oí the defendants claims, both as they have been wigbialiy surveyed, and have herein been directed to be surveyed ; and moreover, to decree and order whatever else law and equity may require to be done in the case.
Upon petition a rehearing was granted, and after-wards, on the 12th June 1811, all the judges being present, the following opinion and decree was given :
By Judge Wallace — The petition for a rehearing was preferred bv the counsellor the appellants, and only particularly allegesthat this court has erred, in disre- *259 garbing ⅛0 call for a spring contained In John Konne • ⅜ t a.try for 20< > iteres of L>uvl. This enr.y one of a !•! >el (-rtíicinot t !,trivs, on which the claims of toe np-p-T/e smterialH’ rkpen.l; and the parrs iht'vof now r.ecrss'trv to b: rop* .ut.l, are — John Kennedy enters 200 ucrea — adjoining hw •wrAnM'iic — on the southeast eerier of said s-.uk tm at — íoduiir," a spring near said corner — and running e-r-uvardiv.
The parries having exhibited two ipnngs, nebicer oí them notorious, and ahoir 200 poles from t/ie cornerf neither can be taken as alluded to in K’s entry.
The enrry having alluded to r-fuch terns as that the pofition oí k muft in lome degree affett the locality of the en~ tri ,and the on-lv springs ex- ■ hibited not rel pending to the-calls of the entry, it muft be void for want oí precifion
i he former decree fupport-ing Kennedy’s entry (which taiicd for th® fpnng) is re* veried, &c*
At first vk.w. the cal’, Ir.droUng a spring near said corner, taken m cmmccAia with the odor calls which leave bet« m ited, mat not seem ¡wwatial ; anal so it ap-ir ire to h,;-,, hem tormerlj consul oe i !>v this court and the conn bel *0% Yet a w, on r d'-vting that how-ev Tasar n ;nrh g n\sv have lo en t- die earner, it would, in sor te v.-av, í/nucol die form aui skuation of the sur-to v to ho made ot: the entry, and therefore it roast he deemed indispensable to have exhibited the spring, or to has o proseo that none such ever existed ; in which litter ra-'i; tile call might have been thought to be im-ro-’t ri d. Rut the parties h ¡ve agreed that there are tv/-> -mall oprimís, which, as exhih ted r'U the survey-nr’s evr^erted plat, are about Jo poles distant Rom each other, end upwards of 200 poles from the said corner ; nmi one of these -'¡.'drags fsa\ the one iH'-.rest the cor-rtvr) prohahh was meant by Kennedy. Bin if so, the call f-ir a spring near tin: corner, was caRni tied to mislead other loe itero ; lor On v coiihí no. sup pace that a spring at the di-.unce r,l 2' i0 ¡inlrs was inn nd/.l- And it ooght forth,'r to be observed, th it this soring is not proven to have been notorious at the date of the entry, or ( ven that it hud then an existence. Indeed, in general, the doctrine is cur;u t. that whf-n a natural object is found, it ought to be presumed to have be-oi permanent, rail'd the comrary is sh-nvn. But m this country springs ate well known tobe exceptions; for a large majority of those now in use, have originated s'uce the entrv in question was made, or at least they have become visible since that and this small spring maybe one of that number. I hi re Are, the court now conceives that this entry has not been suoported ; and con-ee'prcmly, that the entries of the appelie.- being depend mt <m :\ chain of t-ntrn s, oí whb h tlx13 entry composes a material ]>nk, must be prunon'iced void, for the L»ek oí that prtcimou which L ixipfiisd by the land law- *260 Suppose, however, the court should have presumid that the spring could have been found and. known to be the one called for in Ivennedy’s entry, and should have decided that it ought to have been surveyed in a rectangular oblong, and so as its northwestern corner should join the southeastern corner of his settlement, and include the small spring in its southwestern corner ; and then that the other dependant entries should be laid off adjoining thereto, conformably to the former opinion of this court; it would be found by an experiment on the surveyor’s connected plat, that no part of the appel-lee’s entry of 160 acres, thus laid off, would fall within his survey formerly made thereon, and that very little, if any, of his entry of 3Q0 acres would fail within his survey formerly made on it. It has been urged by the counsel for the appellee, that Boone’s old trace jhat leads to the settlement called for in one of Andrew Ken-kannon’s entries, on which the claims of the appellants depend, has not been saiistactorily established : but from the depositions exhibited in this suit, and the notoriety of Silver creek, also called for in this entry, the court is still of opinion that the trace intended must have been well understood by the generality of those who were conversant in that part of the country when the entry was made.
Wherefore it is now decreed and ordered that the former opinion and decree of this court in this suit pronounced, be set aside and annulled, so far as it is repugnant to this opinion ; and it' is further decreed and ordered that the said suit be remanded to the circuit court lor the county of Madison, that it may make the injunction obtained by the appellants, who were complainants in that court, perpetual, so far as it shall be found that their purchases from Mastín Clay, when his claim shall be laid off conformably to die former decree of this court, interfere with the claim ol the appellee, on which he founded his ejectment; and moreover make such other decrees and orders therein, in favor cither of the appellants or appellee, as the c■cju.i-. ty of their respective cases may require.